2010 Ark. App. 342

**Ressie Lee BROOKS, Appellant**

v.

**FIRST STATE BANK, N.A., Appellee.**

**No. CA 09–767.**

Court of Appeals of Arkansas.

April 21, 2010.

Rehearing Denied June 2, 2010.

Matthew M. Henry, The Henry Firm, P.A., Little Rock, AR, for appellant.

William Clay Brazil, Brazil, Adlong, Winningham & Mickel, Conway, AR, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Ressie Brooks contends that the trial court erred in granting summary judgment to appellee First State Bank on her complaint for malicious prosecution and abuse of process.[1] This suit arose after the bank permitted Brooks to withdraw funds from a check Brooks had deposited into her savings account that turned out to be counterfeit. The bank wanted Brooks to repay but she refused. This was reported to the police, which led to the prosecutor filing theft charges that were ultimately dismissed with a minimal restitution order. Brooks sued the bank for its conduct, but after consideration of the bank's motion for summary judgment, the trial court dismissed her complaint. This appeal resulted. We affirm.

Summary judgment is regarded simply as one of the tools in a trial court's efficiency arsenal; however, the granting of the motion is only approved when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission on file is such that there is no genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). The object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried. *Rowland v. Gastroenterology Assoc., P.A.*, 280 Ark. 278, 657 S.W.2d 536 (1983).

In this instance, the material facts are not in dispute but rather the inferences to be drawn from those facts. We describe them here in more detail. A bogus company communicated news to Brooks that she had won a $50,000 sweepstakes prize. She was instructed that a check representing a partial payment of $2270 would be sent to her, and she should cash the check and remit the funds back for payment of fees and taxes due on her prize money. Brooks acted on these instructions. She received a $2270 check drawn on an out-of-state bank and deposited it into her savings account at First State Bank on December 20, 2005. The bank informed her that the funds would not be available to be withdrawn for five business days. She returned to the bank and withdrew these funds on December 28. Brooks promptly wired $2100 back to the sweepstakes company, at an expense to her of $129. On or about January 1, the bank received the returned check, which was determined to be counterfeit.

In the meantime, Brooks realized she had been scammed, so on January 3, 2006, she went back to the bank to determine what happened with the check. The bank informed her the check was no good and it sought to recoup the funds from her. Detective Brian Williams of the Conway Police Department had been summoned to the bank, so he was present when Brooks was informed of the problem. Brooks explained her situation, that she had been scammed and that she did not have the money. The bank and Williams insisted that Brooks was responsible for repay-

---

1. The trial court also dismissed her claim for outrage on summary judgment. She does not appeal that part of the dismissal, so our opinion will be limited to discussion related to the remaining allegations.

ment. The bank suggested that she enter into a loan agreement with them to pay it back over time. The bank offered to prepare loan documents for her to come back to execute the next day.

Brooks left the bank and sought legal advice; she was informed that the mistake was the bank's, not hers. So, she did not enter into a repayment agreement. On January 30, 2006, the bank reported this to Williams, who proceeded to investigate the matter. Williams consulted with the prosecuting attorney, who believed this constituted theft. An arrest warrant was prepared. Brooks was arrested on January 31, 2006, jailed overnight in the city jail, and then bonded out. No one told Brooks that she had to pay the bank to make the charges go away. But, seven months later, on September 7, 2006, the charge was nol prossed with a restitution order of $41 to be paid within thirty days to the county sheriff to benefit the bank.

Brooks filed her civil complaint shortly thereafter alleging malicious prosecution and abuse of process. In her complaint, she contended that the bank controlled the criminal investigation; that it knew or should have known that it failed in its duty of ordinary care in presentation and payment of the check; that it used the criminal process to coerce her to pay for its own error; that these acts were outrageous and designed to make her suffer anguish, humiliation, and monetary loss; and that these acts rose to the level of malicious prosecution and abuse of process. The bank answered her complaint denying all detrimental allegations, and it also asserted that it was immune from suit under a safe-harbor provision of federal law concerning the reporting responsibilities of financial institutions.

After discovery was well underway, the bank filed a motion for summary judgment contending that the prosecutor acted independently in deciding to file charges and later dismiss the charge with a restitution order of $41; that the prosecution was solely directed by the prosecutor; that Brooks's allegations did not rise to the level to support her causes of action, viewing the evidence in her favor; and that the bank was immune from liability under its duty to report suspicious financial activity. The bank attached the affidavit of the prosecutor to support those assertions. Brooks responded that the bank did more than basic reporting of suspicious activity and that it was an active participant in making sure she was arrested with the goal of forcing her to pay for its mistake. The judge took the matter under advisement, considering several cases cited by the parties, and rendered judgment in favor of the bank. The judge deemed the evidence to indicate only a routine investigation.

We are left to decide whether the state of the evidence was such that Brooks did not present a prima facie case of malicious prosecution or abuse of process. We will discuss the causes of action in order.

In order to establish a claim for malicious prosecution, a plaintiff must prove the following five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *South Ark. Petroleum Co. v. Schiesser,* 343 Ark. 492, 36 S.W.3d 317 (2001); *McLaughlin v. Cox,* 324 Ark. 361, 922 S.W.2d 327 (1996); *Burkett v. Burkett,* 95 Ark.App. 314, 236 S.W.3d 563 (2006). In the context of malicious prosecution, probable cause means such a state of facts or credible information that would induce an ordinarily cautious person to believe that the accused is guilty of the crime for which he is charged.

*Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989).

It is important to consider for each allegation that federal law, 31 U.S.C. § 5318, provides that financial institutions are to report "any possible violation of law or regulation" and are immune from liability in doing so. *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 109 S.W.3d 672 (2003). Arkansas has determined that this law is to be broadly interpreted but not to the extent that it gives banks such blanket immunity that even malicious, willful criminal and civil violations of law are protected. *Id.* For example, the Act does not provide protection for banks that pursue personal vendettas against delinquent borrowers. *Id.* A bank cannot shift responsibility to the prosecutor if it supplies the prosecutor with inaccurate information. *Id.* The Act requires there to be a "possible" violation of law before a financial institution can claim protection of the statute. *Id.* Thus, malice may be inferred from the lack of probable cause. *See Wal-Mart Stores, Inc. v. Thomas*, 76 Ark.App. 33, 61 S.W.3d 844 (2001).

Here, there was no allegation that the bank provided false information about Brooks. The bank believed she had an obligation to pay the money back, whereas she did not have that same belief. So, was there probable cause to believe Brooks wrongfully retained the bank's money constituting theft? We believe so.

Brooks was charged with theft of property, which would require the State to prove that she knowingly took or exercised unauthorized control over, or made an unauthorized transfer of an interest in, the bank's property with the purpose to deprive the owner of its property. Ark.Code Ann. § 5-36-103 (Repl.2006). While she did not bear any criminal intent when she deposited the check and withdrew the funds, she later realized that it was probably a fake and decidedly refused to repay the original owner, the bank, when the check was discovered to indeed be counterfeit.

When the defendant makes a full, fair, and truthful disclosure of all facts known to him to competent counsel (or the prosecuting attorney) and then acts bona fide upon such advice, then this will be a good defense to a claim of malicious prosecution. *South Ark. Petroleum Co. v. Schiesser, supra; Kellerman v. Zeno*, 64 Ark.App. 79, 983 S.W.2d 136 (1998). Here, the bank reasonably believed that it was owed the money from Brooks, even if she was misled to acquire the funds. The bank conveyed that information, and the prosecutor acted upon it in filing charges. Because there was probable cause to believe Brooks committed a theft of some kind when she refused to return the funds, her cause of action for malicious prosecution could not survive summary judgment. We need not discuss the other elements of malicious prosecution because failure of one element renders her case defunct.[2]

Moving to the allegation of abuse of process, Brooks had to establish the following elements: (1) a legal procedure set in motion in proper form, even

---

**2.** For example, the entry of a nolle prosequi is a sufficiently favorable termination of a proceeding in favor of the accused, *see Crockett Motor Sales, Inc. v. London*, 283 Ark. 106, 671 S.W.2d 187 (1984), but it is not, standing alone, evidence that probable cause was lacking. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003). The parties disagree about whether Brooks received a favorable termination because while the charge was dismissed, it was accompanied by an order to pay restitution. We need not, and do not, answer this question.

with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *Schiesser, supra.* The test of abuse of process is whether a judicial process is used to extort or coerce. *Routh Wrecker Serv., Inc. v. Washington,* 335 Ark. 232, 980 S.W.2d 240 (1998). The key to the tort is the improper use of process after its issuance to accomplish a purpose for which the process was not designed. *Harmon v. Carco Carriage Corp.,* 320 Ark. 322, 895 S.W.2d 938 (1995). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Sundeen, supra.* Abuse of process is a narrow tort. *Union Nat'l Bank of Little Rock v. Kutait,* 312 Ark. 14, 846 S.W.2d 652 (1993). A "vexatious" lawsuit is not enough; indeed, abuse of process is more difficult to prove when the action is based upon probable cause. *Id.*

 Here, viewing the evidence in the light most favorable to Brooks, after she was arrested, she was not told by anyone that she had to pay the money back to the bank. The only contact from the bank she thought happened post-arrest was one phone call from a lady at the bank who told her she could still repay the bank's money, "if you like." Brooks did not allege that any bank representative threatened or harassed her for the money, nor did she recall anyone but the judge ordering her to repay the bank $41 when her case was dismissed. She had no recollection of how or why the dismissal happened.

When a party cannot present proof on an essential element of her claim, there is no remaining genuine issue of material fact, and the party moving for a summary judgment is entitled to judgment as a matter of law. *Eady v. Lansford,* 351 Ark. 249, 92 S.W.3d 57 (2002); *Short v. Little Rock Dodge, Inc.,* 297 Ark. 104, 759 S.W.2d 553 (1988). In this case, Brooks offered no proof whatsoever of any coercive actions or efforts to extort by the bank. Considering that abuse of process is a narrow tort, and neither coercion or extortion is a reasonable inference to be drawn from the one phone call after her arrest, we affirm the trial court's decision to grant the bank's motion for summary judgment. *Compare Sundeen, supra.*

In sum, we affirm the trial judge's grant of summary judgment on both malicious prosecution and abuse of process.

HART and Henry, JJ., agree.