

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-137

| | |
|---|---|
| JACK JONES<br>    APPELLANT<br><br>V.<br><br>CHARLES McLEMORE and ROGER McLEMORE<br>    APPELLEES | **Opinion Delivered** February 26, 2014<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. CV-11-130-2]<br><br>HONORABLE MARION A. HUMPHREY, JUDGE<br><br>AFFIRMED |

**DAVID M. GLOVER, Judge**

Jack Jones filed a complaint against Charles McLemore and Roger McLemore, brothers, alleging malicious prosecution, defamation, conspiracy, and violations of his civil rights. He filed suit against the McLemores both as individuals and as agents of the Arkansas State Police. The McLemores subsequently moved for summary judgment, contending that there were no issues of material fact, that they were entitled to judgment as a matter of law, and that some of the claims were barred by statutes of limitation. The trial court granted the motion for summary judgment. This appeal followed, with Jones contending that the trial court erred 1) in granting summary judgment concerning the malicious-prosecution claim[1] and 2) in ruling that Jones's claims under the Arkansas Civil Rights Act (ACRA) were barred

---

[1]Jones's arguments regarding the conspiracy-to-commit-malicious-prosecution claim have not been pursued in this appeal. Although the argument heading includes it, the body of the argument itself does not address it.



by the statute of limitations.  We affirm.

*Background*

The facts and personalities are both plentiful.  Jack Jones was County Judge for Jefferson County, first elected in 1989 and still serving when these events transpired.  The McLemore brothers were employed by the Arkansas State Police at the time, both serving as special agents.  They have since retired.  In December 2004 or January 2005, Jones and Charles McLemore engaged in what Jones described as a heated verbal altercation concerning the naming of a road located near property owned by Charles.  According to Jones, Charles's brother Roger later came to Jones's office several times, telling Jones that he had better make things right with Charles.  At least one other person was reportedly told by Charles that he was "going to get" Jones.  However, Charles and one of his neighbors, who was present, disputed Jones's account of the encounter and described Jones as the one who was agitated.

In February 2005, the Jefferson County Sheriff's Office began investigating allegations of theft at the Jefferson County tire shredder.  In May 2005, Prosecuting Attorney Stevan Dalrymple referred the matter to the Arkansas State Police for further investigation.  Roger McLemore was assigned to the investigation.  The scope of the investigation thereafter expanded to include allegations of wrongdoing by Jones.  Dalrymple was notified by Arkansas State Police Sergeant Ron Stayton in late summer 2005 that Jones was considered a "person of interest" in the investigation.  In September 2005, because Dalrymple was concerned that he had conflicts of interest, efforts were made to coordinate the appointment of a special prosecutor to investigate whether charges should be filed against Jones and other county

SLIP OPINION

employees. On November 8, 2005, a Jefferson County circuit judge granted Dalrymple's motion for appointment of a special prosecutor and entered an order appointing Lona McCastlain, Prosecuting Attorney of the Twenty-Third Judicial Circuit (West), as special prosecutor. Also on November 8, 2005, Roger formally notified McCastlain that Arkansas State Police protocol required the prosecuting attorney to present a written request for the investigation to proceed because Jones was an elected official. She did so the next week, requesting that the state police investigate Jones, Tommy Tidwell, Tery Carlisle, and Richard Barranco. The formal Jones investigation was opened in December 2005.

In August 2006, Roger submitted his investigation summary to McCastlain. In the spring of 2007, McCastlain stepped down as special prosecutor because of the workload in her home district. Robert Dittrich, Prosecuting Attorney for the Eleventh Judicial Circuit (East), was appointed to take her place. He remained in the role of special prosecutor for this matter through the May 2010 trial.

On April 13, 2007, Roger executed several probable-cause affidavits that were reportedly based on information he had obtained during the investigation. On June 30, 2007, the Legislative Audit Division reported to Dittrich findings of several possible ethical violations. Dittrich subsequently filed a criminal information against Jones, and a warrant for his arrest was issued on February 13, 2008. Several of the charges were eventually *nolle prossed* by Dittrich, and others were dismissed on directed verdict. Jones went to trial on the remaining charges in May 2010, and he was found not guilty. Charles's official role in the actual investigation was minimal, consisting of serving several subpoenas and sitting in on two

witness interviews.

On March 4, 2011, Jones filed his complaint against the McLemores, alleging malicious prosecution, defamation, violations of the Arkansas Civil Rights Act, and civil conspiracy to commit malicious prosecution and defamation. As previously explained, the trial court eventually granted the McLemores' request for summary judgment, and this appeal followed.

## I. *Malicious Prosecution Claim*

For his first point of appeal, Jones contends that the trial court erred in granting summary judgment concerning the malicious-prosecution claim. We disagree.

Summary judgment is regarded as simply one of the tools in a trial court's efficiency arsenal. *Brooks v. First State Bank*, 2010 Ark. App. 342, 374 S.W.3d 846. However, the granting of the motion is approved only when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that there is no genuine remaining issue of fact, and the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Id.* The burden of proving that there is no genuine issue of material fact is upon the moving party. *Welsher v. Mercy Health Sys.*, 2012 Ark. App. 394. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Davis v. Schneider Nat'l, Inc.*, 2013 Ark. App. 737, ____ S.W.3d ____. The object of summary-judgment proceedings is not to try the issues, but to determine if there are any

issues to be tried. *Brooks*, *supra*.

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Davis*, *supra*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id*.

There is no disagreement among the parties concerning the elements that must be proved in order to establish malicious prosecution: 1) a proceeding instituted or continued by the defendant against the plaintiff; 2) termination of the proceeding in favor of the plaintiff; 3) absence of probable cause for the proceeding; 4) malice on the part of the defendant; and 5) damages. *Id*. Here, a proceeding was definitely instituted against Jones; it terminated in his favor; and it is fair to say that he suffered damages as a result. However, all five elements must be proved in order to prevail on such a claim. The two elements that are disputed are malice on the part of the McLemores and the absence of probable cause for the proceeding. Even if we were to conclude that a material question of fact exists regarding the McLemores' motivation, which is something we are not deciding in this appeal, we agree with the trial court that there is no genuine issue of fact remaining concerning the element that requires the absence of probable cause. The failure of one element renders a malicious–prosecution case defunct. *Brooks*, *supra*.

In the context of malicious prosecution, probable cause means such a state of facts or



credible information that would induce an ordinarily cautious person to believe that the accused is guilty of the crime for which he is charged. *Id.* When the defendant makes a full, fair, and truthful disclosure of all facts known to him to competent counsel (or the prosecuting attorney) and then acts in a bona fide manner upon such advice, then this will be a good defense to a claim of malicious prosecution. *Id.* Arrests are evaluated from the standpoint of prudent and cautious officers at the time an arrest is made, but continuation of a prosecution in the face of facts that undermine probable cause can support a malicious–prosecution claim. *Coombs v. Hot Springs Village Prop. Owners Ass'n.*, 98 Ark. App. 226, 254 S.W.3d 5 (2007). Once probable cause is established for one offense, it becomes immaterial whether it existed for other offenses. *Martin v. Hallum*, 2010 Ark. App. 193, 374 S.W.3d 152.

Here, the McLemores submitted with their motion for summary judgment numerous exhibits, including: documents that established the active involvement of at least two special prosecutors in this case, McCastlain and Dittrich; reports of the information developed by Roger during the Arkansas State Police investigation; and reports generated by the Division of Legislative Audit in its investigation (which was specifically requested by the special prosecutor). The motion and its supporting exhibits established the presence of probable cause to pursue charges against Jones. The trial court determined, and we agree, that Jones did not meet that proof with sufficient proof of his own to create a material question of fact about probable cause. Jones contends in this appeal that the charges against him were based solely upon affidavits of Roger McLemore, which he claims either embellished the truth or presented false information to create the appearance of probable cause. The bulk of his



argument, however, focuses on Jones's version of facts that he claims demonstrate malice on the part of the McLemores, rooted in the altercation over the road name, rather than on the lack of probable cause. Moreover, although Jones cites some examples of instances by which he claims Roger either lied or embellished the truth, Jones does not do so with respect to all of the charges, and he ignores instances where there is competing proof. The existence of contradictory evidence regarding some matters does not automatically eliminate the existence of probable cause. Actually, the decision to pursue the charges against Jones was made by Dittrich, not the McLemores, and that decision was not based solely on Roger's affidavits. For example, Dittrich had the benefit of the report filed by the Division of Legislative Audit concerning allegations that had been made against Jones; that report, although inconclusive on some matters, did not clear Jones of all impropriety. In short, questions of fact that will defeat a motion for summary judgment must be material to the claim. Jones's efforts to create questions of fact were either not material, not related to the existence of probable cause, or both. We find no error in the trial court's grant of summary judgment.

## II. *Arkansas Civil Rights Act Violations*

For his final point of appeal, Jones contends that the trial court erred in ruling that his claims under the ACRA were barred by the statute of limitations. In its October 24, 2012 order, the trial court ruled in pertinent part: "The following claims are barred by the statute of limitations: (1) all claims made under the Arkansas Civil Rights Act – failure to disclose exculpatory evidence (*Brady* violations), submission of false affidavits (*Franks* violations), and due process[.]" Jones does not disagree that a three-year limitations period is applicable to

ACRA claims; rather, he takes issue with the point at which the three-year period begins to run. He takes the position that the primary "underlying tort" supporting his claim that his civil rights were violated under ACRA was malicious prosecution; that because "termination of the proceeding in favor of the plaintiff" is an essential element of a malicious-prosecution claim, his ACRA cause of action could not commence until the proceedings had been terminated in his favor; that the proceedings terminated in his favor on May 26, 2010, when he was acquitted of the charges at trial; and that he filed his lawsuit against the McLemores on March 4, 2011, well within the applicable statute of limitations.

The McLemores, on the other hand, contend that the very latest that the three-year period began to run was with Jones's arrest in February 2008, and that because he filed his suit in March 2011, the trial court was correct in barring the ACRA claims based on the statute of limitations.

The problem with Jones's argument is that, while the alleged acts that he relies upon to make his ACRA claims may well be encompassed within the overall tort of malicious prosecution, it is the separate acts that control the limitations period. That is, the complaint filed by Jones lays out his ACRA claim as Count I, alleging:

> Defendants Charles McLemore and Roger McLemore, while acting under color of state law, have violated Plaintiff's constitutional rights by the manner in which they carried on a five-year investigation and subsequent criminal prosecution of Plaintiff which was replete with intentional false affidavits, withholding of exculpatory evidence, and outrageous conduct by government officials.

The probable-cause affidavits executed by Roger McLemore were prepared in 2007 and Jones's actual arrest took place in February 2008, both of which occurred more than three

8


years before he filed his lawsuit. The actual trial and his acquittal were not necessary prerequisites to establish his ACRA claim.

Affirmed.

WALMSLEY and GRUBER, JJ., agree.

*Banks Law Firm, P.L.L.C.*, by: *Charles A. Banks* and *Grant Ballard*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *James O. Howe*, Ass't Att'y Gen., for appellees.