

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-592

| | |
|---|---|
| DANIEL PATRICK AND MARY PATRICK<br><br>APPELLANTS<br><br>V.<br><br><br>TYSON FOODS, INC., WOODY L. DOSS, AND GREGORY CLARK<br>APPELLEES | Opinion Delivered: APRIL 20, 2016<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CV-14-994]<br><br>HONORABLE CRISTI BEAUMONT, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Daniel Patrick appeals the entry of summary judgment against him in his lawsuit against appellees Tyson Foods, Inc. ("Tyson"), Woody L. Doss, and Gregory O. Clark.[1] Appellant filed a complaint in the Circuit Court of Washington County, Arkansas, seeking damages for alleged malicious prosecution, defamation of character, and outrage. Appellant's allegations arose from the following brief summary of the facts. Appellant was a long-time employee at Tyson's Springdale, Arkansas, plant until he was terminated after a February 2012 ammonia leak inside the plant. An internal investigation led by Tyson's security department investigators, Woody Doss and Gregory Clark, led Tyson to conclude that the ammonia leak was most likely caused by appellant and another employee tampering

---

[1] Daniel's wife Mary Patrick was also a plaintiff in this lawsuit. Mary's claims in the lawsuit were dismissed at the trial court level and are not advanced as issues on appeal. Although Mary is listed as an appellant in the caption of this case, we need not and do not discuss Mary as a named appellant.

with plant equipment. Upon request, Tyson provided its investigative materials to the Springdale Police Department. The investigative materials included a video of the work area where and when the ammonia leak occurred and the internal investigators' interpretation of what appellant appeared to be doing on the video. The police forwarded the Tyson investigation materials to the Washington County prosecutor. The county prosecutor subsequently filed charges against appellant in April 2012 for second-degree criminal mischief and ten counts of third-degree battery committed against other Tyson employees who were exposed to the ammonia gas. The prosecutor nolle prossed the charges four months later in August 2012.

Appellant filed his civil complaint in June 2014. The primary accusation in appellant's complaint was that the Tyson investigators wrongly informed law enforcement that the video showed him behaving in a criminal fashion when, in reality, the video only showed that appellant was performing the routine tasks of his job. Appellees subsequently filed a motion for summary judgment in December 2014, contending that appellant could not establish all the elements of the alleged torts, nor could he prove any damages proximately caused by the alleged torts. Appellees attached affidavits, deposition testimony, the Tyson internal investigative video and report, and the Washington County criminal-charge documents. Appellant filed a response in opposition to summary judgment. The trial court determined that appellees were entitled to judgment as a matter of law and granted summary judgment. This appeal followed, and appellant contends that the trial court erred in dismissing his complaint. We disagree and affirm.

## I. *Standard of Review*

The standard of review in the appeal of a summary judgment is well settled. Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Benton Cnty. v. Overland Dev. Co.*, 371 Ark. 559, 268 S.W.3d 885 (2007). Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.* Conclusory allegations are, however, insufficient to create a fact issue in a summary-judgment situation. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Greenlee v. J.B. Hunt Transport Servs., Inc.*, 2009 Ark. 506, 342 S.W.3d 274; *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. The object of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

II. *Statement of Evidence and Facts*

A more amplified recitation of the underlying facts is necessary prior to our consideration of the arguments on appeal. In the early morning of February 6, 2012, an ammonia leak at the Tyson plant resulted in the plant being evacuated. Several law enforcement officers, fire department personnel, and emergency services personnel were dispatched to the scene. Ten Tyson plant employees were taken to the hospital for treatment of inhalation injuries. A Springdale police officer, working in conjunction with an FBI Task Force, contacted Tyson because the Springdale fire department had concerns about whether the ammonia release could have possibly been a terroristic act. Doss, one of Tyson's corporate security managers, responded to the Springdale police officer that Tyson was of the initial opinion that the event was caused by an accidental ammonia release. The police officer advised Doss to report to him if Tyson later determined that the leak was not accidental.

Tyson immediately commenced an internal investigation to determine the root cause of the ammonia release. The investigation revealed that pressure gauges indicated increased pressure in an ammonia refrigeration line shortly before the leak. It was determined that the ammonia release was caused by a partially open valve and a missing plug in a pipe located on the vacuum side of the ammonia-based refrigeration system. The partially open valve and the missing plug ultimately allowed for the ammonia to be released into the plant.

Appellant's work station was in the same area of the plant as the open valve and missing plug. The plant had previously installed ceiling-mounted security cameras. One of the security cameras covered appellant's general work area and the valve. During the

investigation, Doss and other Tyson management personnel[2] reviewed the video and observed a maintenance mechanic spending what they perceived as an unusual amount of time repetitively and unnecessarily adjusting and testing plant equipment near the ammonia line. The actual valve on the ammonia line was not quite visible on the video due to the location and sight line of the video camera. Another employee was observed walking behind the maintenance mechanic while carrying and opening a bottle, an item not permitted in this area of the plant. The maintenance mechanic was then observed moving toward the valve area, and the other employee was seen bending over the valve area. Tyson investigative personnel concluded that the maintenance mechanic was attempting to shield the other employee from view and acting as a lookout, while the other employee attempted to remove ammonia from the valve. The other employee subsequently appeared startled, stood up, and quickly walked away while putting the top back on the bottle. Tyson's investigators opined that due to insufficient time, there was a failure to fully close the valve, which subsequently caused the leak. After additional investigation, Tyson identified the maintenance mechanic in the video as the appellant, Daniel Patrick.

As previously and specifically requested by the Springdale police officer, Doss reported to the Springdale police that the ammonia release no longer appeared to be accidental. In subsequent affidavits submitted with the motion for summary judgment, Clark and Doss swore that an FBI agent and a Springdale police officer came to the plant to

---

[2] The Tyson personnel included corporate counsel Chris Mitchell, plant safety manager David Smith, complex environmental health and safety manager Patrick Abshire, human resource director Hector Gonzalez, assistant plant manager Matt Evans, and refrigeration superintendent James L. Richardson.

view the security video. According to Doss's affidavit, the police officer who viewed the videotape opined that this was an attempt to steal ammonia for the purpose of manufacturing drugs. Doss and Clark interviewed appellant and the other employee seen on the video, both of whom denied any wrongdoing.

Doss and Clark subsequently prepared a special internal investigative report on this ammonia release, a typical practice for Tyson's internal use. Doss and Clark relied on the information provided by the plant management in compiling the report. Neither Doss nor Clark knew either appellant or the other Tyson employee shown on the video prior to interviewing them. Each page of Doss and Clark's report was marked "TYSON CONFIDENTIAL."

A Springdale police detective contacted Doss and made a formal request for a copy of the internal investigative report and other material. Doss obtained approval from the Tyson in-house corporate counsel and delivered the investigative report to the Springdale police. A copy of the security video was contained in the delivered material.

Tyson subsequently terminated appellant from employment on February 10, 2012, based on Tyson's internal investigation. Neither Doss nor Clark was involved in the decision to terminate appellant.

On April 9, 2012, the prosecutor charged appellant in Washington County Circuit Court with criminal mischief and battery. The affidavit for the issuance of the arrest warrant was completed by Detective Eric Evans of the Springdale Police Department and it was based, in part, on the material provided by Tyson. Washington County Deputy Prosecuting Attorney Brian Lamb approved the detective's affidavit, and District Judge Ray Reynolds

signed the warrant finding that the affidavit demonstrated "reasonable and probable cause for the issuance of a warrant of arrest." The criminal information was filed the same date, April 9, 2012. Four months later, on August 10, 2012, the deputy prosecutor moved to *nolle prosequi* the criminal charges, and the circuit judge approved the dismissal of charges.

Two years later, in June 2014, appellant filed his civil complaint. The complaint alleged that appellant had worked for Tyson for over twenty years, that the Tyson plant had experienced multiple chemical releases over those years resulting in governmental action, and that Tyson intentionally blamed him for the ammonia leak in order to have a scapegoat by using falsified accounts of what the video revealed. Appellant recited seven particular characterizations of his behavior at work that he believed were false, given a review of the video itself. For example, appellant stated that the video did not show anyone with a container or opening or closing one, nor did it show anyone bending over the valve or standing up quickly from the valve. Appellant accused Tyson of malicious prosecution based on the "false and outrageous report as to what the video showed," which was made "with malice and without probable cause." Appellant's complaint accused Tyson of defamation of character because Tyson maliciously and knowingly gave "false oral and written statements [that] were published broadly to superiors at Tyson Foods, Inc., to the Springdale Police Department, to prosecution officials, and to newspaper and television reporters and to the general public." Appellant's complaint also alleged the tort of outrage based on the "false statements and misrepresentations, as well as the harsh personal treatment visited upon [appellant] by Doss and Clark." He contended that Tyson's behavior caused him damages, including costs incurred to defend against the criminal charges; loss of past

and future wages and benefits due to wrongful discharge; extreme emotional pain, anguish, distress, depression, embarrassment, and humiliation; and damage to his reputation in the community. Each appellee filed separate answers, denying that their acts were anything other than appropriate internal investigations done in good faith and stating that law enforcement independently sought Tyson's information and determined that criminal charges should be pursued. Each appellee responded that appellant was an at-will employee, that appellant suffered no compensable damages, that they were entitled to the advice-of-counsel defense, that they had a qualified privilege to communicate about the ammonia leak at the Tyson plant, that they acted without malice, and that their statements about appellant were truthful.

After the civil lawsuit was filed, discovery proceeded. In December 2014, appellees moved for summary judgment on all three causes of action. Appellees asserted that as to malicious prosecution, appellant failed to prove the essential elements of malicious prosecution and further, that they were entitled to the defense of advice of counsel. Appellees asserted that as to defamation, they possessed a qualified privilege to communicate to law enforcement officials regarding the release of ammonia gas at the plant. Appellees asserted that as to outrage, even if every allegation made by appellant were true, the allegations did not rise to the level necessary to sustain a lawsuit for the tort of outrage. Appellees presented supportive documentation, including multiple affidavits from Tyson management personnel, affidavits from Doss and Clark, termination paperwork related to appellant, portions of appellant's deposition, the internal investigative report and video, and the filings related to the criminal charges. In resistance, appellant's primary contention was

that Tyson personnel, including Doss and Clark, mischaracterized and falsely stated to law enforcement their interpretation of what the security video showed. Stated another way, appellant asserted that Tyson told law enforcement that appellant was engaged in suspicious and perhaps criminal activity when in reality appellant was merely doing his job. Appellant's response was accompanied by his own affidavit in which appellant listed nine "misrepresentations of fact" that showed a variance between what Tyson's investigative report recited and what he perceived the video actually showed. Notably, though, appellant attached the affidavit of the deputy prosecuting attorney. In that affidavit, the prosecuting attorney swore that he was provided Springdale police reports, Tyson's special investigation report, and the security video and then witnessed the Springdale police detective sign the affidavit for the issuance of the arrest warrant.

In granting summary judgment on malicious prosecution, the trial court found that (1) appellees provided all the information collected during their investigation to law enforcement, entitling appellees to the defense of advice of counsel; (2) there was no evidence of malice; and (3) probable cause was found to exist. As to defamation, the trial judge found that appellees, as appellant's employer, were entitled to a qualified privilege, that the publication was to law enforcement only, and that the disclosure was based on first-hand knowledge. The trial judge found that the communication was exercised in a reasonable manner and for a proper purpose and that appellant had not presented any evidence that the privilege was abused in any fashion or was based on falsehoods. As to outrage, the trial judge entered summary judgment on the basis that this narrowly construed tort was particularly limited in the context of at-will-employee discharge, and further that

SLIP OPINION

appellant presented no evidence of the outrageous conduct required at law. (The trial court also granted summary judgment on appellant's wife's claim of loss of consortium, a derivative claim not relevant on appeal.) We now examine each of the three torts allegedly committed by appellees and whether the trial court erred in granting summary judgment.

### III. *Analysis*

### A. Malicious Prosecution

To establish a claim for malicious prosecution, a plaintiff must prove five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *Sundeen*, 355 Ark. at 142, 133 S.W.3d at 395. The failure of one element renders a malicious-prosecution case defunct. *Jones v. McLemore*, 2014 Ark. App. 147, 432 S.W.3d 668.

The trial court's summary-judgment order recites that probable cause was found to exist. Probable cause for prosecution must be based on the existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged. *Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 163, 15 S.W.3d 320, 324 (2000). The test for determining probable cause is an objective one. *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 681 S.W.2d 359 (1984). Ordinary caution is a standard of reasonableness. *See McMullen v. McHughes Law Firm*, 2015 Ark. 15, at 15–16, 454 S.W.3d 200, 210. In making a probable-cause determination in the context of a malicious-prosecution suit, the court generally "concentrates on the facts before the action commenced." *Sundeen*, 355 Ark. at 145, 133 S.W.3d at 397; s*ee also Coombs v.*

*Hot Springs Village Prop. Owners Ass'n*, 98 Ark. App. 226, 233, 254 S.W.3d 5, 11 (2007).

Malice has been defined as any improper or sinister motive for instituting the suit. *Sundeen*,

*supra*. Malice can be inferred from the lack of probable cause. *Wal-Mart Stores, Inc. v.*

*Williams*, 71 Ark. App. 211, 29 S.W.3d 754 (2000). When, however, probable cause exists

and there is no strong evidence of malice, a charge of malicious prosecution cannot succeed.

*Sundeen*, *supra*.

The prosecutor charged appellant with second-degree criminal mischief pursuant to

Arkansas Code Annotated section 5–38–204(a)(2). Subsection (a)(2) defines second-degree

criminal mischief as being committed when a person "purposely tampers with any property

of another person and by the tampering causes substantial inconvenience to the owner or

another person." *See Coombs*, *supra* (discussing probable cause for second-degree criminal

mischief in the context of malicious-prosecution claim). The prosecutor also charged

appellant with third-degree battery pursuant to Arkansas Code Annotated section 5–13–

203(a)(2), which is committed when a person "recklessly causes physical injury to another

person." A person is "reckless" under our criminal code when he "consciously disregards a

substantial and unjustifiable risk that the attendant circumstances exist or the result will

occur." Ark. Code Ann. § 5–2–202(3)(A).

On appeal, appellant contends that Tyson misrepresented appellant's activities in the

internal report provided to law enforcement, which fabricated the basis for finding probable

cause and shows malice on Tyson's part. Appellant does not challenge the existence of any

particular element of the crimes for which he was charged. Appellant asserts only that the

video does not manifest a reasonable basis on which to believe that he assisted in tampering

with the ammonia valve that undisputedly caused physical injury. Appellant, however, concedes that there is "no contest as to the identity or accuracy of the video recording" or that it was provided to law enforcement prior to charges being filed. The affidavit of the deputy prosecutor attests that he was provided a copy of Tyson's investigative report. The affidavits provided by Doss and Clark both swore that a Springdale police officer came to the Tyson plant and viewed the security video; this occurred prior to the preparation of the Tyson investigative report and tender of the report and video to police. The police officer's viewing the video at the plant was also confirmed by the affidavits of two safety managers employed at the Tyson plant. The police officer opined at the time he viewed the video that it showed criminal activity.

Appellant's contention that the video and the investigative report can be interpreted differently does not mean that appellant showed evidence of a lack of probable cause. Appellees internally were of the opinion, mistakenly or not, that appellant was involved in a nonaccidental ammonia leak. Appellees did not seek out law enforcement but instead complied with law enforcement's initiation of contact and requests for information. Appellees, the Springdale police, and the prosecutor could reasonably have believed that appellant was involved with purposely tampering with plant equipment, which caused substantial inconvenience and physical injury and that the appellant recklessly caused physical injury to the ten Tyson employees who were treated for ammonia-gas inhalation. This satisfied the requirement of probable cause to believe that appellant committed the crimes for which he was charged. *See Pourmedhi v. Nw. Nat'l Bank*, 849 F.2d 1145 (8th

Cir. 1988) (summary judgment proper, dismissing malicious-prosecution claim due to there being no genuine issue of material fact on the absence of probable cause).

Furthermore, appellant presented only conclusory allegations without any evidence or facts to support the existence of a genuine issue of material fact on the element of malice. Without meeting proof with proof on the element of malice, appellant's claim of malicious prosecution fails. *Compare Sundeen*, *supra*. Given the existence of probable cause and lack of evidence of malice, the trial court did not err in entering summary judgment on malicious prosecution in this case. *Compare Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60; *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001).

We hasten to add that as to the first element of malicious prosecution, appellant failed to present any evidence that appellees "instituted or continued" the criminal proceedings. It is true that when the information given to a prosecutor is known by the giver to be false, then an intelligent exercise of the prosecutor's discretion becomes impossible, and a prosecution based on it is procured by the person giving the false information. *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 109 S.W.3d 672 (2003). Here, however, appellees provided all the information that they possessed, and appellees presented unrebutted evidence that they in good faith believed the information to be accurate. In contrast, appellant relied on mere accusations that the conclusions drawn from the information by the appellees were false. The police, the prosecutor, the trial court, and our court were all provided the admittedly accurate video to compare against appellees' internal investigative report. We cannot say that the trial court erred in drawing the only reasonable conclusion that there was a full, fair, truthful disclosure of all facts known to Tyson. This necessarily

means that appellees did not "institute" the criminal prosecution. *See* 52 Am. Jur. 2d *Malicious Prosecution* § 23 (noting that to charge a private person with the responsibility for initiation of proceedings by a public official, it must appear that his desire to have the proceedings initiated was the determining factor in the official's decision to commence the prosecution or that the information acted upon was known to be false by the information provider, citing *Pratt v. Kilborn Motors, Inc.*, 363 N.E.2d 452 (Ill. App. Ct. 1977)).

Even had appellant met proof with proof on all the elements of malicious prosecution, we would still affirm. Acting on the advice of counsel is a defense to a charge of malicious prosecution. *Family Dollar Trucking, Inc. v. Huff*, 2015 Ark. App. 574, 474 S.W.3d 100. In order to avail oneself of this defense, one must have made a full, fair, and truthful disclosure of all facts known to him and acted in good faith on counsel's advice. *Id.* The proponent of the defense bears the burden to establish it by a preponderance of the evidence. *Eggleston v. Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987). The rule that affords a defense to an action for malicious prosecution for one who has acted on the advice of counsel applies with greater force if the proceeding was instituted on the advice and approval of the state's prosecuting attorney. 52 Am. Jur. 2d *Malicious Prosecution* § 107. If one in good faith fully and fairly discloses to an attorney or the prosecutor all the information he has and is advised that a crime was committed, then he has made out a complete defense to an action for malicious prosecution. *Id.* When one makes such a disclosure to the prosecutor and follows the prosecuting attorney's advice, the law conclusively presumes the existence of probable cause, the lack of which is a necessary element in a suit for malicious prosecution. *See Jennings Motors v. Burchfield*, 182 Ark. 1047, 34 S.W.2d 455 (1931)

(malicious prosecution reversed where, even though Burchfield accused Jennings's officials of making untruthful accusations to its own attorney and the prosecutor, Jennings presented testimony that it merely provided what evidence it had to both attorneys).

Appellant argues in his brief that appellees should not be entitled to the defense because appellees did not provide a full, fair, and truthful account of what appellant was observed doing on the video, contending that the police officer must not have viewed the security video prior to seeking criminal charges. We disagree. The undisputed facts are that the prosecutor, not Tyson, filed and pursued legal proceedings against appellant after receiving *all* the information garnered by Tyson in its investigation. This information included the security video that—according to appellant—clearly and accurately sets forth appellant's activities on the morning in question. Any perceived contradictions between the internal investigative report and the security video provided by Tyson at the request of law enforcement were for law enforcement to assess. Tyson presented affidavits swearing that a Springdale police officer viewed the video himself prior to the report even being prepared and ultimately tendered to law enforcement. In summary, we hold that the trial court did not err in entering summary judgment in favor of Tyson on malicious prosecution. *Compare Sawada*, *supra*.

## B. Defamation

To recover for defamation, a plaintiff must prove six elements: (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) the damages suffered by the plaintiff. *See*

*Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 129 S.W.3d 324 (2003). A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Addington v. Wal-Mart Stores, Inc.*, 81 Ark. App. 441, 105 S.W.3d 369 (2003). A plaintiff must prove that defamatory statements have been communicated to others and that the statements have detrimentally affected those relations. *Lancaster v. Red Robin Int'l, Inc.*, 2011 Ark. App. 706, 386 S.W.3d 662.

The law recognizes that a potentially defamatory communication may not impose liability under the qualified-privilege doctrine. A statement may become privileged when made in good faith and in reference to a subject matter in which the communicator has an interest or duty and to a person having a corresponding interest or duty. *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002). For example, negligently reporting activity thought to be criminal is usually a privileged communication. *See DeHart v. Wal-Mart Stores, Inc.*, 328 Ark. 579, 946 S.W.2d 647 (1997). But even if a statement may possibly be privileged, the speaker who steps outside the privilege, or abuses it, loses it. *Navorro-Monzo v. Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989). The qualified-privilege doctrine does not extend to published statements that have no relation to the protected interest, and it is lost if the publication is not made for the purpose of furthering a common interest. *Id.* The qualified privilege may also be lost if it is abused by excessive publication, if the statement is made with malice, or if the statement is made with a lack of grounds for belief in the truth of the statement. *Superior Fed. Bank*, *supra*.

Applying the law related to defamation to this appeal, we hold that the trial court did not err in entering summary judgment on behalf of appellees. Assuming arguendo that

all six elements of defamation were sufficiently supported by evidence in order to survive summary judgment, the trial court did not err in finding that Tyson was protected by the qualified privilege afforded to an employer. Tyson responded to a request by law enforcement by delivering material that was created as a confidential internal corporate investigative report to determine the root cause of the ammonia leak. The response to law enforcement was factual, necessary, and not excessive. Appellees demonstrated a prima facie case of entitlement to this qualified privilege, and appellant failed to meet proof with proof to demonstrate that there was any basis to bar appellees from the benefit of the qualified privilege. We affirm on this point.

## C. Outrage

The tort of outrage—also known as intentional infliction of emotional distress—opens an actor up to civil liability for committing extreme and outrageous behavior. *See McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998). Arkansas courts have consistently taken a narrow view in recognizing claims for the tort of outrage. *Family Dollar Trucking, Inc.*, *supra*. Our supreme court has taken great care to point out that this tort does not make actionable every insult or indignity one must endure in life. *Dillard Dep't Stores, Inc. v. Adams*, 315 Ark. 303, 867 S.W.2d 442 (1993). This tort provides a basis for recovery only for conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious, and to be utterly intolerable in a civilized society. *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). This tort is not easily established; merely describing conduct as outrageous does not

make it so. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). This tort has four elements:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct;
> (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;"
> (3) the actions of the defendant were the cause of the plaintiff's distress; and
> (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403–04 (2002). Notably, in *Cordes*, our supreme court held that allegations that the defendant caused the plaintiffs to be arrested, even if proven, did not rise to a level sufficient to support a claim for damages for the tort of outrage.

In his appellate brief, appellant recites the four elements of outrage as set forth in *Faulkner*, followed by this as his entire argument on this point:

> We believe those elements have been met. Being falsely charged with crime alters the entirety of a person's relationships, and creates huge stress. Here we had the mistreatment of the appellant upon original interview by these appellees. He lost his job and income and status because of it.

We are not persuaded by this conclusory argument. Merely describing conduct as outrageous does not make it so. *Cordes*, *supra*. We hold that appellant failed to provide any specific allegation, much less proof, to sustain that Tyson committed acts of "outrage" in investigating the plant's ammonia leak and in complying with a request by law enforcement for results of that investigation. *Compare Family Dollar Trucking, Inc.*, *supra*. We affirm the entry of summary judgment in favor of appellees on appellant's claim of outrage.

Affirmed.



GLADWIN, C.J., and VAUGHT, J., agree.

*Erwin L. Davis*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Kathlyn Graves* and *Jeffrey L. Spillyards*, for appellees.