Earl A. GIVENS and his wife *v.* Robert HIXSON

81-243                                    631 S.W. 2d 263

Supreme Court of Arkansas
Opinion delivered March 29, 1982
[Rehearing denied May 3, 1982.]

*Jay W. Dickey, Jr.,* for appellants.

*Laser, Sharp & Huckabay,* for appellee.

GEORGE ROSE SMITH, Justice. In January, 1980, the plaintiff Hixson employed the defendant Givens to manage

Hixson's 800-acre farm property for one year. Givens went to work on February 1, but Hixson discharged him on March 19. When Hixson brought this action in unlawful detainer to recover possession of the house that Givens was occupying on the farm, Givens and his wife filed a counterclaim in which Givens sought damages for breach of contract and both he and his wife sought damages in tort for severe emotional distress and bodily harm caused by the alleged outrageous manner in which Givens was discharged. On the basis of the discovery depositions of both Hixson and Givens, Hixson moved for a summary judgment with respect to the tort claim only. This appeal from the partial summary judgment granting that motion comes to us as a tort case. Rule 29 (1) (o). The order is appealable. *Findley* v. *Time Ins. Co.,* 264 Ark. 647, 573 S.W. 2d 908 (1978).

When, as here, the movant makes a prima facie case for a summary judgment, the other party must discard the cloak of formal allegations and meet proof with proof by showing that an issue of fact exists. *Cummings, Inc.* v. *Beardsley,* 271 Ark. 596, 609 S.W. 2d 66 (1980). We therefore disregard arguments based on the pleadings, such as the assertion that Hixson enticed Givens away from his former employer, and state the actual pertinent proof in its light most favorable to Givens.

Givens testified on discovery that in January, 1980, after having managed J. P. Walt's farm, then 1,600 acres, for 21 years, he had trouble finding the necessary workers for that sized farm and decided to seek a job on a smaller place. His inquiries led him to apply to Hixson for the managership of Hixson's 800-acre place. After the two men had agreed upon a one-year contract Givens for the first time told Walt that he was changing jobs.

On March 17 Hixson told Givens that he was dissatisfied with his work. On March 19 Hixson discharged Givens while the two men were outside a John Deere store, where Hixson thought Givens had been spending too much time idling. No one else was present. Givens's total testimony about the firing amounted to this: Hixson's face was red, and he talked "like he wanted to jump all over me. Said, 'We're

through. You don't work for me anymore.' Told me to carry the truck and park it, and said: 'I'll put you in the road.' Just like that." In somewhat different language Givens also described the incident in these words: "[H]e said, 'We're through.' I asked him what he meant. He said, 'You don't work for me anymore.' He said, 'You haven't been doing a thing all morning, but sitting down there on that stool around that fire.'"

Givens also testified that after the firing he was depressed, could not sleep or eat, lost weight, and entered a hospital a month later (apparently owing to a heart condition). He testified, however, that he had been hospitalized for angina pains in 1977 and had been taking medicine every day, that he had told Hixson that he was in pretty good health, and that Hixson knew nothing special about Givens's condition and had not been told that Givens was easily upset.

The new and still developing tort of outrage is not easily established. It requires clear-cut proof. "Liability has been found *only* [our italics] where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement of Torts (2d), § 46, Comment *d* (1965); *M.B.M. Co.* v. *Counce,* 268 Ark. 269, 596 S.W. 2d 681 (1980). It is for the trial court to determine, in the first instance, whether the conduct may reasonably be regarded as so outrageous as to permit recovery. Restatement, *id.,* Comment *h.* Merely describing conduct as outrageous does not make it so. If Givens's testimony presents an issue of fact, then any employee who is abruptly discharged by an angry boss is entitled to have the asserted tort submitted to a jury. That is not the law. The trial judge was unquestionably right in granting the partial summary judgment. The action for breach of contract is still pending in the trial court and is not involved on this appeal.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice. I wholly disagree with the view that appellant's cause of action should be summarily dismissed. I believe a tortious wrong has been alleged in his pleadings and supported in his deposition sufficient for submission to the jury.

I see no rational distinction between appellant's claim and that of Shirley Ann Counce, reported in *M.B.M. Co.* v. *Counce,* 268 Ark. 269, 596 S.W. 2d 681 (1980), where we unanimously upheld the Court of Appeals in reversing the granting of summary judgment by the trial court. In fact, this case seems stronger. Ms. Counce was accused only indirectly of dishonesty, whereas appellant was accused directly (and falsely) of laziness and neglect, qualities equally repugnant to employment. Ms. Counce's employment was terminable at will, whereas appellant was hired for a year. The time, the manner and the aftermath of appellant's firing was insensitive, if not abusive.

In sum, appellant contends he gave up a job he had held for 22 years as farm manager to accept appellee's offer of a higher salary plus other benefits. He was hired to work from February 1 to December 31 and was told that appellee knew nothing about farming and that he was expected to manage the farm without interference. He was promised a new home, a truck, bonus and vacation. Six weeks later (too late to find comparable employment) he was fired, not for incompetence or neglect, but on the false accusation that he was loafing. Appellant described the firing, outside a John Deere dealership, as follows: "[appellee] said, 'We're through. You don't work for me anymore.' Told me to carry the truck back and park it and said, 'I'll put you in the road.' Just like that." Two weeks later eviction proceedings were brought against appellant and his family, not from a need of the dwelling, which remained vacant, and executed while appellant was hospitalized for mental and emotional disturbances which he attributes to the alleged mistreatment.

Viewing these circumstances as a whole, and giving them the fullest import required by our cases, I am unwilling to say as a matter of law appellant has no recourse in tort. I believe reasonable minds could reach different con-

clusions as to whether appellee's conduct meets the test of tortious outrage. I would reverse and remand the case for trial.