Sandra PALMER *v.* ARKANSAS COUNCIL on ECONOMIC EDUCATION, RPL Management Resources, Inc., Jim Glenn, Sonya Schmidt, and Polly Jackson

00–333                                                  40 S.W.3d 784

Supreme Court of Arkansas
Opinion delivered April 19, 2001
[Petition for rehearing denied May 31, 2001.*]

---

* GLAZE, J., would grant. IMBER, J., not participating.

462

*Eichenbaum, Liles & Hester, P.A.,* by: *James H. Penick, III,* for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.C.,* by: *Dona S. Galchus* and *Abraham W. Bogoslavsky,* for appellees.

*Wright, Lindsey & Jennings,* by: *Bettina E. Brownstein* and *William Stuart Jackson,* for appellee RPL Management Resources, Inc.

RAY THORNTON, Justice. Appellant, Sandra B. Palmer, was employed with the Arkansas Council on Economic Education ("Council") from October 11, 1965 until October 3, 1995, when she was terminated at fifty-four years of age by the Council's acting chairman, Jim Glenn ("Chairman"), and its executive director, Sonya Schmidt ("Director"), with the approval of the assistant director, Polly Jackson ("Jackson"). The appellees include the Council, Chairman, Director, Jackson, and RPL Management Resources, Inc. ("RPL"), a human resources consulting firm hired by the Council. Upon termination, appellant brought an action against the Council for age discrimination under the Arkansas Public Employer Age Discrimination Act, Ark. Code Ann. §§ 21-3-201 to 21-3-205 (Repl. 1996). She also asserted common-law claims of wrongful discharge, tortious interference with employment relations, and the tort of outrage against all appellees. The trial court granted appellees' summary-judgment motion, and we affirm.

## I. Background

On October 11, 1965, appellant began working for the Council as an at-will employee and held the position of secretary. She eventually was promoted to administrative assistant for the Council. Appellant's duties and responsibilities as the Council's administrative assistant included maintaining the Council's financial records, including certificates of deposit, depositing funds, handling various accounts, and working with the Council's accountants to prepare financial statements. Appellant also prepared mailings for workshops

and performed other related administrative tasks. During her thirty-year career before July of 1995, appellant was never disciplined for failing to properly perform any of her duties.

The Council is chartered with the State of Arkansas as a private, nonprofit corporation that was formed for the purpose of promoting economic education in elementary and secondary schools in Arkansas. The Council's five employees are paid by the Council rather than through the state payroll, and its employees are not entitled to state benefits. The Arkansas Department of Education ("ADE") exercises no control over the Council's employees, and the Director of the Council is responsible for hiring and firing its employees.

The Council's operations are subsidized through the use of the State's postal services and telephone services, and beginning in 1979, the Council leased space in the Arch Ford Education Building. The Council's yearly funding included a $200,000 state grant from the Department of Education's budget and from workshops that are conducted at state universities. The Council also receives funding through local businesses and individuals. The Council's annual revenues for 1995 aggregated $455,047.63.

The Council's Director assumed her position on July 5, 1995. During the Director's first staff meeting, appellant challenged the Director for disallowing a day off of work for appellant's beauty shop appointment. On August 3, 1995, appellant confronted Jackson about a memo written several years earlier concerning appellant's work performance. Jackson became upset over this confrontation and threatened to resign. During this time, appellant also voiced her concerns to the Chairman and the Director over their decision to deposit the Council's state and private funds into one bank account.

On August 4, 1995, the Director placed appellant on probation, citing her for insubordination, specifically "lack of respect," "no[t] buying into [the] new office culture," and "[lack of] mutual trust — no hidden agendas." Before August 4, 1995, the Chairman retained the services of a human resources consultant, R. Landerville ("Landerville") at RPL. On August 9, 1995, Landerville came to Little Rock to assist the Council in a review of its personnel policies, job descriptions, and general office procedures. On August 16, 1995, the Chairman and the Director specifically discussed with Landerville their employment problem with appellant. Landerville suggested various ways to handle appellant's

performance problems, and on August 25, 1995, appellant was removed from her probationary status.

After removing appellant from probation, the Director again encountered problems with appellant and informed the Chairman and Landerville that appellant undermined her authority, that she no longer trusted appellant, and that she did not feel comfortable being away from the office when appellant was there. On September 6, 1995, the Director recommended to the Chairman that the Council terminate appellant's employment. The Chairman again asked for Landerville's advice, and a memo documenting appellant's performance was edited by the Director, the Chairman, and Landerville. Appellant was then terminated on October 3, 1995.

Following her termination, appellant filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter and found that the Council did not have the requisite number of employees for jurisdiction under the Age Discrimination in Employment Act ("ADEA"), pursuant to 29 U.S.C. §§ 621-634 (1994 and Supp. 1995, 1996, 1997, 1998). After receiving the right-to-sue letter, appellant brought suit in federal court against the Council, the ADE, and the State of Arkansas. The United States District Court for the Eastern District of Arkansas granted the Council's motion to dismiss. Appellant appealed the decision to the Eighth Circuit Court of Appeals, and the case was affirmed. On appeal, the Eighth Circuit upheld the district court's ruling that the Council was not an agency or instrumentality of the State of Arkansas.

Appellant filed the present lawsuit in state court, alleging that the Council had violated the Arkansas Public Employer Age Discrimination Act, Ark. Code Ann. §§ 21-3-201 to 21-3-205. Further, appellant alleged that the Director, Chairman, Jackson, and RPL interfered with a business relationship, and committed the tort of outrage. The Second Division of Pulaski County Circuit Court granted appellees' motion for summary judgment. From this order, appellant brings her appeal.

## II. Standard of review

■ ■ Our standard of review for summary-judgment appeals was set forth in *Crockett v. Essex Home, Inc.*, 341 Ark. 558, 19 S.W.3d 585 (2000), where we stated:

In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.

Once a moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must demonstrate a genuine issue of material fact by meeting proof with proof.

Furthermore, the moving party may present pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, to support the burden of showing entitlement to summary judgment as a matter of law.

*Crockett, supra* (quoting *Milam v. Bank of Cabot,* 327 Ark. 256, 937 S.W.2d 653 (1997)) (citations omitted); *see also* Ark. R. Civ. P. 56.

### III. Wrongful-discharge claims

■ Our well-established rule is that when an employee's employment is for an indefinite term, either party may terminate the relationship without cause or at-will. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988). We modified the employment-at-will doctrine to provide that where an at-will employee (one employed for an indefinite term) relies on a personnel manual or employment agreement that expressly states that he or she cannot be discharged except for cause, the employee may not be arbitrarily discharged in violation of such a provision. *Id.*

■ In *Sterling, supra,* we stated:

[W]e have no hesitancy in concluding that Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2)

cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.

*Id.* In *Sterling, supra,* we recognized the public-policy exception to the employment-at-will doctrine when we stated:

A[n] employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or proprietary interests.

*Id.* (citations omitted). In finding a violation of public policy, we have stated that "it is generally recognized that the public policy of a state is found in its constitution and statutes." *Id.*

Appellant contends that two areas of public policy under the Arkansas Age Discrimination Act and the Fiscal Responsibility Act support her claims for wrongful discharge. As her first allegation for wrongful discharge, appellant contends that the trial court erred in determining that the Council is not a "public employer" under the Arkansas Age Discrimination Act. She argues that the Council is a public employer, and therefore, the Council should be subject to the public policy against age discrimination as set forth in Ark. Code Ann. § 21-3-203, which prohibits a public employer from discriminating against an employee on the basis of his or her age. The statute provides:

(a) It shall be unlawful for a public employer:

(1) To fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's age[.]

*Id.*

In making its ruling, the trial court relied upon *Palmer v. Arkansas Council on Economic Education,* 154 F.3d 892 (1998), where the Eighth Circuit held that the Council was a private employer within the definition of the Age Discrimination in Employment

Act ("ADEA") under 29 ·U.S.C. § 621–634. *Palmer, supra.* In answering the question, the court first addressed the issue whether the Council fit under the definition of employer under the act:

> (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees. . . . The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a state . . . [.]

*Id.*

■ Because the Council did not have the requisite number of employees to qualify as an employer under the first part of the definition, the court then determined whether the Council qualified as "an agency or instrumentality of the ADE or the State of Arkansas." *Id.* · Citing federal case law, the court held that the Council was neither an agency nor an instrumentality of ADE or the State of Arkansas. *Id.* The Eighth Circuit stated:

> The facts of this case show that the ACEE is a private employer. The ACEE's employees do not share in the ADE's or state's employee pension funds, and they are not subject to a common civil service employment or grievance policy. While Palmer has shown that the ACEE's creation included the involvement of people closely tied to the ADE, she has not shown that either the State of Arkansas or the ADE ever controlled the terms of employment for the ACEE's employees. Although the ADE provides significant funding for the ACEE, the ADE does so with the expectation of receiving value from the ACEE. The fact that the ADE and State of Arkansas rely on the ACEE to provide services to Arkansas' citizens does not transform the ACEE into an agency of the ADE or State of Arkansas under the ADEA.

*Id.*

We are called upon to decide the same issue in this case. Under the Arkansas Age Discrimination Act, a threshold question is whether the Council qualifies as an agency of the State. Arkansas Code Annotated § 21-3-201 states:

> For the purposes of this subchapter, unless the context otherwise requires, "public employer" shall mean any agency, department, board, commission, bureau, council, institution, or other entity of the state supported by appropriation of state or federal funds, or

any county or municipality or other political subdivision of this state. "Public employer" specifically includes public universities, colleges, and public school districts.

*Id.*

Because the Eighth Circuit has already decided the issue whether the Council is an agency or instrumentality of the State, we first consider whether our review of the same issue in a dispute between the same parties is barred from appellate review under the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, bars relitigation of issues of law or fact previously litigated by the parties. *Fairchild v. Norris*, 317 Ark. 166, 876 S.W.2d 588 (1994). When an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties. *Id.* The elements of collateral estoppel are: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993). A federal court judgment may preclude relitigation of issues in state court. *Scogin v. Tex-Ark Joist Co.*, 281 Ark. 175, 662 S.W.2d 819 (1984).

■ We conclude that appellant is precluded under the doctrine of collateral estoppel from rearguing the issue whether the Council is an agency of the State, and consequently a "public employer." *Fairchild v. Norris*, 314 Ark. 221, 861 S.W.2d 111 (1993) (per curiam) (holding that appellant cannot reassert the issue on appeal and is precluded from doing so under the doctrine of collateral estoppel). It follows that because the Council is not a "public employer," the argument that appellant is entitled to the protection of Ark. Code Ann. § 21-3-203 must fail.

As her second allegation for wrongful discharge, appellant argues that she was wrongfully discharged from her employment with the Council as a matter of public policy because she voiced her concern over the Council's placing both state and private funds in the same bank account. Specifically, appellant argued that the commingling of the funds is prohibited by the public policy of fiscal responsibility. In support of her argument, appellant cites the Fiscal Responsibility Act and general state accounting laws found at Ark. Code Ann. §§ 19-1-601 to 19-1-612 (Repl. 1998), Ark. Code Ann. §§ 19-4-101 to 19-4-2202 (Repl. 1998 and Supp. 1999), Ark.

Code Ann. §§ 21-5-101 to 21-5-107 (Repl. 1996 and Supp. 1999), and Ark. Code Ann. §§ 21-5-201 to 21-5-219 (Repl. 1996 and Supp. 1999).

We have stated that an at-will employee cannot be terminated if he or she is fired in violation of a well-established public policy of the State under *Counce, supra,* but that such public policy must be outlined in our statutes. Appellant voiced her concern in a staff meeting over commingling state and private funds in the same bank account. She later testified:

> There was talk at a staff meeting of depositing the state and private funds into the same account at a staff meeting. . . . I tried to explain why we had never done that — because state grant money was subject to audit at any time . . . . [The Chairman] thought we should have one checkbook and put the monies together. I suggested to [him] to check with Senator Keet and Senator Russ because they would know where it was written and how it came about. I was terminated before I knew what happened.

In order to support her argument, appellant must offer statutory authority to show that her dispute with the Chairman is based upon a violation of the public policy of Arkansas. Based upon our standard of review in evaluating an order granting summary judgment under *Crockett, supra,* we cannot say that appellant has demonstrated a genuine issue of material fact by meeting proof with proof. Here, the argument fails because there are no state statutes, including those statutes cited by appellant, that prohibit an entity from combining state and private funds. Appellant conceded this point during her deposition. Because appellant has not demonstrated that she was wrongfully discharged because of her opposition to commingling state and private funds, we affirm on this point.

### IV. Tortious interference

For her next point on appeal, appellant argues that the Director, Chairman, Jackson, and RPL tortiously interfered with her business relationship with the Council. Under Arkansas law, a malicious and wilful interference with contractual rights and relationships of another has been recognized as an actionable tort. *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969). In order to establish a claim for tortious interference with a contract, a

plaintiff must establish (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the third party; (3) intentional and improper interference by that third party inducing or causing a breach or termination of the relationship; and (4) resulting damage to the plaintiff. *See Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160 (1998). We have also said that a successful claim for interference with a contractual relation must allege and prove that a third person did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant. *Navorro-Monzo v. Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989).

An action for tortious interference with a contractual relationship is based upon a defendant's conduct toward a third party. *See Mason, supra*. Here, it is undisputed that the Director, Chairman, and Jackson are employees of the Council and are not third parties for the purposes of appellant's tortious interference claim.

Appellant also contends that RPL was a third party that tortiously interfered with her business relationship with the Council. We then must determine whether RPL is a third party. It is well settled that a party to a contract, and its agents acting in the scope of their authority, cannot be liable for interfering with the party's own contract. *St. Joseph's Regional Health Center v. Munos*, 326 Ark. 605, 934 S.W.2d 192 (1996) (agent acting within the scope of his authority on behalf of a contracting party was not a separate third party capable of tortious interference).

In the present case, the employment relationship was between appellant and the Council. However, Landerville, on behalf of RPL, acted as agent in the scope of his capacity as advisor to the Council on personnel matters. Landerville and RPL were hired by the Council, and provided consulting services to the Council. They were not third parties, but throughout the period beginning in August, 1995, the Council sought advice and consultation from RPL. It is clear that RPL acted as an agent for the Council. Therefore, RPL cannot be held liable for interfering with an employment relationship between appellant and the Council because it was an agent acting at the request of and on behalf of the Council. Accordingly, we affirm on this point.

*V. Tort of outrage*

■ As her third point on appeal, appellant alleges that appellees committed the tort of outrage with respect to her termination from the Council. We first recognized a cause of action for the tort of outrage in an employment setting in *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). In *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982), we cited the *Restatement (Second) of Torts* § 46 Cmt. d (1965), with approval when we stated, "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. Under the framework set forth in *Counce, supra*, we have outlined four elements that are necessary to establish liability for the tort of outrage:

> 1. The actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct;
>
> 2. The conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community";
>
> 3. The actions of the defendant were the cause of the plaintiff's distress; and
>
> 4. The emotional distress sustained by the plaintiff was so severe that no reasonable [person] could be expected to endure it.

*Dietsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). The trial court must determine as a matter of law whether the conduct may reasonably be regarded as so outrageous as to permit recovery. *Id*. Merely describing conduct as outrageous does not make it so. *Id*.

■■ Applying these well-established principles to the present case, it is clear that appellant fails to state a claim for the tort of outrage. Appellant merely alleges that she disagreed with the Director and the Chairman over the use of the Council's funds. She also alleges that she was improperly written up for performance problems, that she was improperly placed on probation, and that she was wrongfully terminated. Appellant fails to show the Council's intent to inflict emotional distress, and her allegations do not meet the strict requirements in *Dietsch, supra* for a claim for tort of

outrage in an employment termination situation. In order for appellant to prevail on this claim, she must have proven that her emotional distress was much more severe, that such conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community." *Id.* The allegation made by appellant does not meet the requirements of Dietsch, supra.

Accordingly, we affirm the trial court's grant of summary judgment.

Affirmed.

GLAZE, J., concurs in part; dissents in part.

IMBER, J., not participating.

TOM GLAZE, Justice, concurring in part; dissenting in part. I concur with most of the majority court's decision, but I disagree with the court's holding that the doctrine of collateral estoppel applies to bar appellant Sandra Palmer's arguing whether appellee Arkansas Council on Economic Education is a "public employee" as described under Ark. Code Ann. § 21-3-201 (Repl. 1996) of the Arkansas Public Employer Age Discrimination Act.

In *Carter v. Owens-Illinois, Inc.*, 261 Ark. 728, 551 S.W.2d 209 (1977), we stated the following rule on collateral estoppel when *identical* cases have been filed in federal district court and state court:

> Federal district courts and state courts are separate jurisdictions. Identical cases between the same parties can be pending in each court at the same time. (Citation omitted.) It is the same situation as if identical cases between the same parties were pending in different states. In such a situation, the first forum to dispose of the case by trial enters a judgment that is binding on the parties.

See also *National Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999); *Scogin v. Tex-Ark Joist Co.*, 281 Ark. 175, 662 S.W.2d 819 (1984).

Here, the majority court misapplies the foregoing rule. The parties to the litigation were first in the federal courts where the Eighth Circuit ultimately held the Council was a "private employer" within the definition of the federal Age Discrimination

in Employment Act (ADEA). *Palmer v. Arkansas Council on Econ. Educ.*, 154 F.3d 892 (8th Cir. 1998). The ADEA, at 29 U.S.C.A. § 630(b), defines "employer" as follows:

> . . . means a person engaged in an industry affecting commerce who has twenty or more employees . . . . The term also means (1) any agent of such a person, and (2) *a state or political subdivision of a state and any agency or instrumentality of a state or a political subdivision of a state* . . . .

Citing the federal case of *Schaefer v. Transportation Media, Inc.*, 859 F.2d 1251 (7th Cir. 1988), the Eighth Circuit Court held that, to show that a defendant institution is an agency of a state or political subdivision of a state *for ADEA purposes, a plaintiff must show that the state or political subdivision had some supervisory control over the plaintiff.* (Emphasis added.)

The instant case involves the Arkansas Age Discrimination Act, not the ADEA, and *for purposes of this state Act, a "public employer" is defined as an agency, . . . counsel, . . .* or other entity of the state *supported by appropriation of state or federal funds,* or any county of municipality or other political subdivision of this state. "Public employer" specifically includes public universities, colleges, and public school districts.

As can be readily seen, the term "employer" differs by definition and significance depending upon whether one is interpreting and applying either the ADEA or the state Age Discrimination Act. In short, Palmer's suit in the federal courts is clearly not identical to the one Palmer now brings in the state courts involving a different act. Consequently, those federal decisions do not answer whether the council is, or is not, a public employer under the state Act, and collateral estoppel does not prevent Palmer from attempting to invoke that state Act. That specific legal issue is not addressed in this appeal.

While Palmer, in my opinion, is not precluded from arguing the Council is a public employer under the Arkansas Age Discrimination Act, she does not show how this might allow her a right of action under the state Act. As the trial court found in its order, granting the Council summary judgment, Palmer has failed to demonstrate where the language of that Act gives her a private right of action.

Nonetheless, Palmer asserts she has shown the Council is a public employer as defined under the Act because the Council's budget is comprised of over 55% in monies from the Arkansas Department of Education, and because it also receives indirect subsidiaries through lease arrangements. In addition, she argues that evidence was presented which by inference showed the Council terminated Palmer because of her age.[1] As a result, Palmer maintains she has an action for wrongful discharge because she was discharged in violation of the public policy of this state. That public policy, Palmer submits, is reflected by the terms set out in Ark. Code Ann. § 21-3-203(a)(i), which in relevant part reads: "It shall be unlawful for a public employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's age."

Arkansas recognizes at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) *cases in which employees are discharged in violation of the general public policy of the state.* (Emphasis added.) *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988). Our court has stated that it is generally recognized that the public policy of a state is found in its constitution and statutes. *Id.* In *Sterling Drug,* we held:

> [A]n employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or proprietary interests.

Although I agree with the majority opinion that the trial court was correct in granting the Council and the other appellees summary judgment regarding the claims of tortious interference and

---

[1] For example, appellee RPL issued a letter to the Council's chairman and director stating that before the Council could terminate an employee for age, it should insure the employee be given an opportunity to salvage her retirement and related benefits. RPL also stated that if Palmer filed a claim, she would likely win.

tort of outrage, I cannot agree that Palmer has failed to show material fact issues exist for a jury determination as to whether she was wrongfully discharged.