Cite as 2023 Ark. App. 476

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-20-366

|  |  |
|---|---|
| JOSE TURCIOS | **Opinion Delivered** October 25, 2023 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-19-1027] |
| V. |  |
| TABITHA CARTER, MICHAEL LUNDY, ANDREA M. CARTER, LIZA LUNDY, DECEMBER SMITH, SARA MELTON, MYRTLE CLIFTON, AND VIVIANA HARRISON | HONORABLE MACKIE M. PIERCE, JUDGE |
|  | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |
| APPELLEES |  |

**WENDY SCHOLTENS WOOD, Judge**

I. *Introduction*

Appellant Jose Turcios appeals the order entered by the Pulaski County Circuit Court dismissing his second amended complaint alleging claims for malicious prosecution and civil conspiracy against appellees Tabitha Carter (T. Carter), Michael Lundy (M. Lundy), Andrea Carter (A. Carter), Liza Lundy (L. Lundy), December Smith, Sara Melton, Myrtle Clifton, and Viviana Harrison. Turcios raises five points on appeal. First, Turcios argues that the circuit court erred in dismissing his claims against T. Carter and M. Lundy for failure of proper service. Second, Turcios argues that the circuit court erred in finding that his claims

against the remaining appellees—A. Carter, Smith, Melton, Clifton, L. Lundy, and Harrison— were barred by collateral estoppel. Third, Turcios claims that the circuit court erred in considering evidence of a subsequent administrative decision against him to decide whether he stated a claim against A. Carter for malicious prosecution. Fourth, Turcios argues that the circuit court erred in finding that his second amended complaint failed to state a claim upon which relief could be granted pursuant to Arkansas Rule of Civil Procedure 12(b)(6) against A. Carter, Smith, Melton, Clifton, L. Lundy, and Harrison. And fifth, Turcios claims that the circuit court erred in considering the doctrine of collateral estoppel because it was waived by Smith, Melton, and Clifton. We reverse the circuit court's decision that Turcios failed to properly serve T. Carter and M. Lundy and remand for further proceedings consistent with this opinion. We affirm the circuit court's decision that Turcios's claims against the remaining appellees are barred by the doctrine of collateral estoppel.

## II. *Facts*

Turcios is the owner of Healthy Smiles dental office in Little Rock, Arkansas. Turcios began treating Smith, who was a minor, in 2010, and he regularly placed her on nitrous oxide during restorative procedures. On March 4, 2015, Smith, then fifteen years old, was placed on nitrous oxide during a restorative procedure. Following the March 4 procedure, Smith told her grandmother, Clifton, and her mother, Melton, that Turcios sexually abused her during her appointment. On March 9, Melton reported Smith's allegations to the Little Rock Police Department (LRPD).

T. Carter was an officer with the LRPD working in the juvenile division and was the lead investigator of Smith's report of abuse. M. Lundy, another LRPD officer working in the juvenile division, also participated in the investigation of the alleged abuse. A. Carter was an investigator with the Arkansas State Police working in the Crimes Against Children unit who investigated Smith's claim of abuse. L. Lundy is a dentist, was married to M. Lundy, and was a former employee of Turcios. Harrison was also a former employee of Turcios.

On March 9, T. Carter referred Smith's case to the Arkansas Department of Human Services (DHS). Smith was interviewed by T. Carter and A. Carter at the Children's Protection Center on March 11. That same day, T. Carter and A. Carter interviewed Melton, Clifton, and Valerie Robertson, another individual who had made similar complaints against Turcios. Following the March 11 interviews, T. Carter executed a probable-cause affidavit concerning the sexual-assault allegations and obtained an arrest warrant for Turcios.

On March 12, Turcios was arrested and charged with second-degree sexual assault. On March 17, the Arkansas State Board of Dental Examiners suspended Turcios's dental license as the result of his arrest. Turcios's dental license was reinstated twenty-eight days later under the condition that he never be left alone with a patient. In late March, T. Carter and A. Carter reviewed video footage from Healthy Smiles taken during Smith's appointment and drafted a memo concluding that the video depicted an instance of sexual assault.

In April 2016, the criminal trial against Turcios proceeded in Pulaski County Circuit Court. T. Carter and Smith (among others) testified, and the jury was shown the Healthy

3

Smiles video footage. On April 26, 2016, a Pulaski County jury acquitted Turcios of all criminal charges.

A. Carter prepared a report in the DHS case regarding Smith's claims of abuse against Turcios finding the allegations to be true. Turcios appealed A. Carter's findings and was given an administrative hearing after the conclusion of his criminal trial. The administrative hearing officer found by a preponderance of the evidence that Turcios had sexually abused Smith and ordered Turcios's name be placed on the Arkansas Child Maltreatment Central Registry. Turcios was notified of his right to appeal the administrative decision to the circuit court, but no appeal was filed.

Following his acquittal in the criminal case and the conclusion of the administrative action against him, Turcios filed an action in the United States District Court for the Eastern District of Arkansas (District Court) in November 2017 against T. Carter, M. Lundy, A. Carter, Smith, Melton, and others. Turcios's complaint alleged three claims for relief under 42 U.S.C. § 1983, including a claim for malicious prosecution and a civil-conspiracy claim that was predicated on the malicious-prosecution claim. In the malicious-prosecution claim, Turcios asserted that the defendants deprived him of rights secured by the Fourth and Fourteenth Amendments because they made false allegations against him; ignored exculpatory evidence; and knowingly entered a conspiracy among themselves (and others) for the purpose of pursuing criminal charges against him and depriving him of his protected property interest and professional reputation with the intent to steal his patients, harm him economically, and benefit the defendants. Although not named as defendants in the federal

4

case, Turcios specifically alleged in his complaint that L. Lundy and Clifton were involved in the conspiracy against him. Turcios's prayer for relief regarding his claims sought damages pursuant to 42 U.S.C. § 1983. Turcios's federal complaint also cited 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state-law claims.

All the defendants in the federal case moved for summary judgment, and on January 22, 2019, the District Court entered an order granting the motions. In granting summary judgment on the malicious-prosecution claim, the District Court found that Turcios presented no evidence that any investigating officer prompted Smith, Melton, or anyone else to make false allegations against him and that he presented no evidence that any officer coerced any witness to testify against him. The District Court concluded that while Turcios's evidence pointed to gaps in the investigation and information that the officers should have pursued, he failed to present evidence of intentional or reckless misconduct by the officers.

Regarding probable cause for Turcios's arrest, the District Court found that T. Carter prepared an affidavit that accurately reported what she had been told by Smith, Melton, Clifton, and Robertson and submitted that affidavit to a judge, who found that the affidavit established probable cause. The District Court concluded—in response to Turcios's claims that T. Carter made material misrepresentations or omissions in the affidavit—that Turcios did not identify any misrepresentations in the affidavit, and he did not show that T. Carter intentionally omitted any material information. The court recognized that Turcios's claim of civil conspiracy was predicated on his claim of malicious prosecution and that because the allegations of malicious prosecution failed as a matter of law, the allegations of civil

5

conspiracy likewise failed as a matter of law. Regarding Turcios's purported state-law claims, the District Court concluded the following:

> It is not clear from Turcios's complaint whether he has alleged state-law claims for malicious prosecution and civil conspiracy. Although his complaint alleges three counts under 42 U.S.C. § 1983 with no separate statement of corresponding state-law claims, he invokes this Court's jurisdiction in part based on 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state-law claims . . . and when he addresses the elements of a malicious prosecution claim in his brief he cites *Stokes v. S. States Coop., Inc.*, 651 F.3d 911, 916 (8th Cir. 2011), which is a diversity case based on Arkansas law . . . . Assuming, without deciding, that Turcios's complaint alleges state-law claims, this Court declines to exercise supplemental jurisdiction over them.

Turcios filed his initial complaint in the present action on February 21, 2019, against T. Carter, M. Lundy, A. Carter, Smith, and Melton, all of whom were defendants in the federal action. He alleged claims for malicious prosecution, the tort of outrage, civil conspiracy, defamation, and violations of the Arkansas Civil Rights Act. The allegations in Turcios's complaint were based on the same facts as those alleged in his federal cause of action. Before the parties were served, Turcios filed an amended complaint on April 26, 2019, adding Clifton, L. Lundy, and Harrison as defendants and asserting the same causes of action.

Appellees filed separate motions to dismiss Turcios's amended complaint. T. Carter and M. Lundy's motion to dismiss asserted that Turcios failed to properly serve them within 120 days as mandated by Arkansas Rule of Civil Procedure 4. A. Carter moved for dismissal under Arkansas Rule of Civil Procedure 12(b)(6), contending Turcios's claims were barred by the statute of limitations and the doctrine of collateral estoppel. Clifton filed a motion to

6

dismiss alleging Turcios's claims were barred by the statute of limitations. Smith and Melton moved to adopt the motion to dismiss filed by A. Carter, contending they were also entitled to dismissal of all Turcios's claims as barred by the statute of limitations and collateral estoppel.

Turcios responded to each appellee's motion to dismiss. After briefing on appellees' respective motions to dismiss had concluded, Turcios filed a second amended complaint, which dropped all claims except malicious prosecution and civil conspiracy. Each appellee moved to dismiss Turcios's second amended complaint.

After a hearing, the circuit court entered an order on February 6, 2020, dismissing Turcios's second amended complaint against all appellees. The circuit court found that Turcios's service on T. Carter and M. Lundy—by leaving the summonses and complaints with Officer John Thomson at the front desk of the LRPD—was insufficient pursuant to Arkansas Rule of Civil Procedure 4(f). The circuit court concluded that because Turcios failed to properly serve T. Carter and M. Lundy within 120 days, dismissal of Turcios's action for failure of proper service was a dismissal with prejudice due to the running of the statute of limitations. Regarding A. Carter and L. Lundy, and relevant to this appeal, the circuit court found that Turcios's claims for malicious prosecution and civil conspiracy were barred by collateral estoppel[1] as the result of the decision of the District Court because the issues of probable cause, malicious prosecution, and civil conspiracy had previously been litigated to

---

[1]The circuit court also found that Turcios's claims against A. Carter were barred by res judicata.

7

conclusion before the District Court. Finally, the circuit court found that the remaining appellees—Smith, Melton, Clifton, and Harrison—had adopted the arguments made by the other appellees in their motions to dismiss, and for the same reasons stated by the court, the remaining appellees' motions to dismiss were also granted. Turcios appeals the circuit court's order.

## III. *Service of Process*

For his first point on appeal, Turcios makes two arguments. The first is that T. Carter and M. Lundy were served in compliance with Arkansas Rule of Civil Procedure 4(f)(1)(C) when service was made on Officer Thomson—their authorized agent for service. Turcios contends that the circuit court clearly erred in concluding otherwise and dismissing his complaint against them. Second, he argues that through judicial and equitable estoppel, T. Carter and M. Lundy have waived any challenge to the service defense. We address the second argument first.

In the pleadings filed before the circuit court, Turcios argued that T. Carter and M. Lundy should be judicially and equitably estopped from claiming improper service of process because they did not dispute service of process in the federal litigation where service was made via certified mail at the LRPD and signed for by a different LRPD officer. However, Turcios did not raise these estoppel arguments at the hearing before the circuit court, and importantly, the circuit court made no findings concerning judicial or equitable estoppel. It is well settled that a party's failure to obtain a ruling is a procedural bar to this court's consideration of an issue on appeal. *Mabe v. Latco Constr., Inc.*, 2023 Ark. App. 154, at 9,

8

662 S.W.3d 717, 722. Accordingly, Turcios's arguments concerning judicial and equitable estoppel are not preserved.

We now turn to the issue of whether the circuit court erred in finding that Turcios failed to properly serve T. Carter and M. Lundy. Rule 4(f) of the Arkansas Rules of Civil Procedure provides that personal service inside the state shall be made on a defendant who is a natural person at least eighteen years old by delivering the process to an agent authorized by appointment or by law to receive service of summons on the defendant's behalf. Ark. R. Civ. P. 4(f)(1)(C) (2023). The return of service is prima facie evidence that service was made as stated. *Harden v. Beck*, 2021 Ark. App. 481, at 8, 639 S.W.3d 401, 406. The burden then shifts to the party claiming that service was not valid to overcome the prima facie case created by proof of service. *Id.*, 639 S.W.3d at 406. We review a circuit court's factual conclusions regarding service of process under a clearly erroneous standard, but when a complaint is dismissed on a question of law, we conduct a de novo review. *Id.* at 7, 639 S.W.3d at 406. Whether service was had is a question of fact, and the credibility of the evidence to rebut proof of service is a matter for the circuit court to decide. *Id.* at 8, 639 S.W.3d at 406.

Turcios presented prima facie evidence of proper service on T. Carter and M. Lundy when he presented the circuit court with two file-marked returns of service—one for T. Carter and one for M. Lundy—filled out by process server Ricky Wheeler that stated: "On June 18, 2019, I delivered the summons and complaint to Det. John Thompson [sic], an agent authorized by appointment or by law to receive service of summons on behalf of [T. Carter and M. Lundy]." These returns are prima facie evidence that service was made as stated.

Thus, the burden shifted to T. Carter and M. Lundy to overcome the prima facie evidence created by these returns of service.

At the hearing, counsel for T. Carter and M. Lundy argued that Officer Thomson was not the authorized agent for service for T. Carter and M. Lundy, and counsel sought to present their and Officer Thomson's testimony and affidavits to rebut the prima facie evidence; however, the circuit court did not allow counsel to present any evidence because the court did not want to convert the hearing into a summary-judgment hearing. Therefore, the returns of service were the only evidence submitted on the issue of service. Nevertheless, the circuit court found that Officer Thomson was not the agent authorized by law to accept service for T. Carter and M. Lundy. This finding is unsupported because there was no evidence submitted to rebut the prima facie proof of service.[2]

As stated above, we review a circuit court's factual conclusions regarding service of process under a clearly erroneous standard. *Harden*, 2021 Ark. App. 481, at 8, 639 S.W.3d

---

[2]We note that the circuit court's order states that the court might have given "some credence" to Turcios's position that Officer Thomson advised the process server that the officer was authorized to accept service of process for T. Carter and M. Lundy but for the fact that Turcios had previously requested that the Little Rock City Attorney's Office (LRCAO) accept service on behalf of T. Carter and M. Lundy, and his request was denied. It appears the circuit court might have inferred that Thomson—a police officer—was not authorized to accept service of process for T. Carter and M. Lundy because they declined to authorize the LRCAO to accept service. The LRCAO and the police department are two different entities, and there is no basis in the record to support the conclusion that Officer Thomson was not an authorized agent because the LRCAO declined to accept service. We further note that when Turcios was informed that the LRCAO would not accept service for T. Carter and M. Lundy, Turcios was told that the two officers "required personal service of them pursuant to Rule 4," which is not inconsistent with Turcios's position on appeal that he complied with Rule 4(f) by serving Officer Thomson.

at 406. Whether service was had is a question of fact, and the credibility of the evidence to rebut proof of service was a matter for the circuit court to decide. *Id.*, 639 S.W.3d at 406. Therefore, the circuit court erred in excluding the relevant evidence on the question of service offered by T. Carter and M. Lundy.

Because the circuit court's dismissal for lack of service rests on an unsupported factual finding, and because it otherwise excluded evidence relevant to the question of service, we reverse the circuit court's order dismissing Turcios's claims against T. Carter and M. Lundy, and we remand for an evidentiary hearing on the issue of whether T. Carter and M. Lundy were properly served and, if necessary, for further proceedings.

## IV. *Collateral Estoppel*

Turcios's second and fifth points on appeal are related. He first contends that the circuit court erred in finding that his malicious-prosecution and civil-conspiracy claims against A. Carter, Smith, Melton, Clifton, L. Lundy, and Harrison were precluded by the doctrine of collateral estoppel. He also argues that Smith, Melton, and Clifton waived the collateral-estoppel defense by not asserting it in their initial responsive pleading.[3] We first consider whether Smith, Melton, and Clifton waived the defense of collateral estoppel.

The record reflects that A. Carter was the only defendant who, in her initial responsive pleading—a motion to dismiss Turcios's original complaint—argued that Turcios's

---

[3]Turcios's argument on this point does not name which appellees waived the collateral-estoppel defense, but he does argue that the appellees in question failed to include the defense in their June 28, 2019 answer to his amended complaint. The June 28 answer was filed by Smith, Melton, and Clifton.

11

claims were barred by collateral estoppel. While Smith and Melton did not assert collateral estoppel in their initial answer, they shortly thereafter filed a motion to dismiss adopting A. Carter's motion asserting the collateral-estoppel defense. Clifton's answer to Turcios's amended complaint and her motion to dismiss his second amended complaint failed to assert the collateral-estoppel defense.

At the motion-to-dismiss hearing, however, Smith, Melton, and Clifton asserted the defense of collateral estoppel and adopted the arguments made on this defense by the other appellees. It is clear from the record of the hearing that the parties and the circuit court understood that all of the appellees were asserting the defense of collateral estoppel.

Arkansas Rule of Civil Procedure 15 provides for liberal amendments to, and supplementation of, pleadings and does not require that the claim be pled in writing at the time the parties actually try the issues. *Ison Props., LLC v. Wood*, 85 Ark. App. 443, 449, 156 S.W.3d 742, 746 (2004). Moreover, we note that at the hearing, Turcios failed to object or argue waiver when counsel for Smith, Melton, and Clifton asserted the defense of collateral estoppel and adopted the arguments of the other appellees requesting dismissal based on collateral estoppel. Arkansas law consistently requires a party to obtain a ruling on an objection to preserve the issue for appellate review. *White v. Davis*, 352 Ark. 183, 186, 99 S.W.3d 409, 412 (2003). We have held many times that the burden of obtaining a ruling is on the movant, and objections and questions left unresolved are waived and may not be considered on appeal. *Id.*, 99 S.W.3d at 412. Accordingly, we hold that Turcios's argument

12

that Smith, Melton, and Clifton waived the defense of collateral estoppel is not preserved for appeal.

Next, Turcios contends that the circuit court erred in finding that the doctrine of collateral estoppel bars his claims and in dismissing his case against A. Carter, Smith, Melton, Clifton, L. Lundy, and Harrison. The Arkansas Supreme Court has held that when reviewing a circuit court's grant of a motion to dismiss, the appellate court must treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Brown v. Towell*, 2021 Ark. 60, at 6, 619 S.W.3d 17, 20. Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*, 619 S.W.3d at 20. Further, we treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id.*, 619 S.W.3d at 20. The standard of review for the grant of a motion to dismiss is whether the circuit court abused its discretion, but any questions of law must be considered de novo. *Id.*, 619 S.W.3d at 20.

The doctrine of res judicata has two aspects: claim preclusion and issue preclusion. *Cox v. Keahey*, 84 Ark. App. 121, 128, 133 S.W.3d 430, 434 (2003). Issue preclusion is also known as collateral estoppel. *Id.*, 133 S.W.3d at 434. The doctrine of collateral estoppel bars relitigation of issues of law or fact that were actually litigated in a previous suit. *Id.* at 128–29, 133 S.W.3d at 434. When an issue of law or fact is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action, whether on the same or a different claim. *Id.* at 129, 133 S.W.3d at 434–35. Collateral estoppel is based on the policy of limiting

litigation to one fair trial on an issue. *Id.*, 133 S.W.3d at 435. Unlike res judicata, or claim preclusion, collateral estoppel does not require mutuality of parties before the doctrine can be applied. *Id.*, 133 S.W.3d at 435. For collateral estoppel to apply, the following elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.*, 133 S.W.3d at 435.

Turcios concedes that his malicious-prosecution and civil-conspiracy claims that he presented in the federal and state proceedings are the same and that the federal summary-judgment decision is a valid, final judgment. He argues, however, that his claims of malicious prosecution and civil conspiracy were not actually litigated or determined by the District Cout's summary-judgment order, and therefore, the discussion of malicious prosecution that is contained in the order, which he acknowledges is extensive, was "nonessential dicta." Turcios also contends that because he raised state-law claims for malicious prosecution and civil conspiracy in his federal complaint and because the District Court declined to exercise supplemental jurisdiction of those claims under 28 U.S.C. § 1367, those claims were dismissed without prejudice, leaving it up to Turcios to determine whether to assert them in state court. However, in this appeal, the applicability of collateral estoppel does not depend

14

on whether Turcios raised state-law claims for malicious prosecution and civil conspiracy in the federal proceeding; therefore, we do not decide whether he did so.[4] [5]

A federal court judgment may preclude relitigation of issues in state court, even if it does not decide state-law claims. *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 471, 40 S.W.3d 784, 790 (2001). In *Palmer*, following her termination from employment with the Arkansas Council on Economic Education (Council), Palmer obtained a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). The EEOC found that the Council did not have the required number of employees to identify as an "employer" under the Age Discrimination in Employment Act (ADEA). Palmer then sued the Council in federal court, and the district court dismissed her claims, finding that the Council was not an agency or instrumentality of the State of Arkansas and, hence, was not a "public employer" under the ADEA. The Eighth Circuit Court of Appeals affirmed, and Palmer

---

[4]We note that Turcios argues that his citation to the supplemental-jurisdiction statute in his federal complaint demonstrates that he asserted state-law claims; however, this argument is belied by his federal court pleadings wherein he alleged claims pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. As the federal court observed, Turcios did not include a "separate statement of corresponding state-law claims." Moreover, for each of the claims he alleged, the only affirmative relief Turcios sought was the recovery of compensatory, actual, and punitive damages under 42 U.S.C. § 1983.

[5]We further note that the issue of whether Turcios alleged in his federal lawsuit any claims arising under state law more appropriately relates to the defense of res judicata that A. Carter asserted below and argues on appeal. Citing *Daily v. Langham*, 2017 Ark. App. 310, 522 S.W.3d 177, she contends that res judicata bars relitigation of claims that could have been, but were not, litigated in a previous proceeding involving the same events. She argues that res judicata applies because Turcios could have litigated his identical state-law claims in the previous proceeding in the District Court but did not allege any in his federal complaint.

15

subsequently filed suit against the Council in Arkansas state court alleging in part a violation of state law pursuant to the Arkansas Public Employer Age Discrimination Act. *Id.* at 471, 40 S.W.3d at 790. The circuit court granted summary judgment. *Id.* at 467, 40 S.W.3d at 787. On appeal, the supreme court affirmed, holding that the doctrine of collateral estoppel barred Palmer from rearguing in state court the same issue that had been decided in the previous dispute between the same parties. It concluded that because the federal court had previously found that the Council was not a public employer, Palmer's claim under state law failed. *Id.* at 471, 40 S.W.3d at 790.

Consistent with *Palmer*, we consider whether the District Court's findings concerning factually identical issues of malicious prosecution and civil conspiracy that were subsequently presented in the circuit court below have preclusive effect under the doctrine of collateral estoppel. In resolving Turcios's claims, the District Court first considered whether his allegations of malicious prosecution stated a claim under 42 U.S.C. § 1983 as he alleged. The District Court noted a line of cases in which the Eighth Circuit had considered malicious-prosecution claims and, consistent with those cases, observed that Turcios's claim might warrant relief if the acts on which his claims were based violated a federal constitutional provision or law.

Turcios incorrectly characterizes the District Court's reliance on these cases to mean that it did not decide his malicious-prosecution claim under federal law because such a claim is not recognized in the Eighth Circuit. On the contrary, as the District Court noted, the Eighth Circuit had not decided whether malicious prosecution is itself a constitutional

16

violation. *Harrington v. City of Council Bluffs*, 678 F.3d 676, 679–81 & n.2 (8th Cir. 2012) (stating that the United States Supreme Court "has used the terms 'prosecution without probable cause' and 'malicious prosecution' referring to the same claim[]" and noting that if malicious prosecution is a constitutional violation, it probably arises under the Fourth Amendment). The Eighth Circuit had held, however, that malicious prosecution can form the basis of a section 1983 suit if the defendant's conduct also infringes some provision of the Constitution or federal law. *Gunderson v. Schleuter*, 904 F.2d 407, 409 (8th Cir. 1990). Consequently, the District Court proceeded to evaluate the acts on which Turcios's claims hinged to determine whether they violated the United States Constitution.[6]

The District Court observed that Turcios's malicious-prosecution claim alleged a deprivation of rights secured by the Fourth and Fourteenth Amendments and that, "as an element of his malicious prosecution claim[,]" he alleged that his arrest was based on a warrant that lacked probable cause. The District Court further observed that Turcios's factual allegations of a malicious prosecution aligned with a recognized substantive-due-process claim for reckless investigation or fabrication of evidence by law enforcement officers

---

[6]Following the District Court's decision in Turcios's case, the United States Supreme Court declared that malicious prosecution is actionable under the Fourth Amendment. *Thompson v. Clark*, ___ U.S. ___, 142 S. Ct. 1332, 1337 (2022). The Eighth Circuit subsequently applied *Thompson* and analyzed a malicious-prosecution claim under both federal and state law in *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).

to falsely formulate a pretense of probable cause.[7] The court concluded that Turcios was not entitled to relief because his evidence did not prove the acts on which his claims rested.

Considering the probable-cause element of malicious prosecution as an independent federal claim that Turcios had been arrested without probable cause in violation of the Fourth Amendment, the District Court found the claim to be without merit. In making that determination, the District Court first concluded Turcios had shown no absence of probable cause. It found that T. Carter's affidavit for Turcios's arrest accurately reported what she had been told by Smith, Melton, Clifton, and Robertson; T. Carter submitted that affidavit to a judge who found it established probable cause; and any arresting officer was entitled to rely on that finding unless the affidavit was so lacking in indicia of probable cause to render belief in the legitimacy of the warrant entirely unreasonable. On the latter point, the District Court found that Turcios had not identified any misrepresentations in the affidavit or shown that T. Carter intentionally omitted any material information from the affidavit.

Relevant to Turcios's allegations of malicious conduct, the District Court also found that he had "presented no evidence that any investigating officer prompted Smith, Melton, or anyone else to make false allegations against him" and "no evidence that any officer

---

[7]Turcios contends that the District Court's discussion of this claim is nonessential dicta because the substantive-due-process claim that he alleged in the federal proceeding did not include his allegations of malicious prosecution and conspiracy. This argument is contradicted by Turcios's federal-court pleadings. Turcios incorporated all his allegations of malicious prosecution and conspiracy into his substantive-due-process claim, which alleged a deprivation of both liberty and property interests under the United States Constitution and 42 U.S.C. § 1983.

coerced any witness to testify against him." The court said that Turcios's "evidence points to gaps in the investigation and information that the officers should have pursued but not to intentional or reckless misconduct by the officers."

The District Court concluded that Turcios's claim that he had been prosecuted maliciously was without merit and, therefore, could not support an independent claim for federal relief. The court further noted that Turcios's claim of civil conspiracy was predicated on his claim of malicious prosecution, and because the alleged malicious prosecution failed, so, too, did Turcios's claim for civil conspiracy. The District Court granted summary judgment in favor of all the defendants against Turcios and dismissed with prejudice his federal claims for malicious prosecution, civil conspiracy, and substantive-due-process violations.

Considering the District Court's resolution of Turcios's federal claims, we reject his argument that the District Court's findings on the issues of probable cause and malicious conduct were not essential to its judgment. Those findings formed the central basis for the federal court's judgment. Therefore, Turcios's reliance on *Alexander v. Twin City Bank*, 322 Ark. 478, 481 (1995), and *Virden v. Roper*, 302 Ark. 125, 129, 788 S.W.2d 470, 472 (1990)—cases in which the courts commented on the substantive merits of claims but ultimately denied relief on statute-of-limitations grounds in *Alexander* and abstention in *Virden*—is misplaced.

A state cause of action for malicious prosecution consists of the following elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2)

19

termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *Patrick v. Tyson Foods, Inc.*, 2016 Ark. App. 221, at 10, 489 S.W.3d 683, 691–92. The District Court's findings that Turcios failed to prove the absence of probable cause and the existence of malicious conduct are dispositive. The doctrine of collateral estoppel precludes Turcios from relitigating these issues because they are two of the five elements necessary to prove a claim of malicious prosecution. A failure of proof on one element renders a malicious-prosecution case defunct. *Jones v. McLemore*, 2014 Ark. App. 147, at 5, 432 S.W.3d 668, 671. It follows that because Turcios did not establish the elements of malicious conduct and lack of probable cause necessary to prove his federal malicious-prosecution claim, that claim fails in state court. And because Turcios's federal civil-conspiracy claim was predicated on malicious prosecution, the civil-conspiracy claim in state court necessarily fails.[8]

For these reasons, we conclude that the District Court actually litigated the issues pertinent to Turcios's federal claims of malicious prosecution and civil conspiracy and that the District Court's findings within its summary-judgment order were essential to the summary judgment. We further hold that the issues that were actually litigated in federal

---

[8]To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, but by unlawful, oppressive, or immoral means, to the injury of another. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 961, 69 S.W.3d 393, 406 (2002). A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy. *Id.*, 69 S.W.3d at 406. A civil conspiracy is an intentional tort that requires a specific intent to accomplish the contemplated wrong. *Id.*, 69 S.W.3d at 406.

court are essential elements of Turcios's state-law claims. Accordingly, we hold that the circuit court did not abuse its discretion in finding that Turcios's malicious-prosecution and civil-conspiracy claims against A. Carter, Smith, Melton, L. Lundy, Clifton, and Harrison[9] were barred by collateral estoppel. Therefore, we affirm the circuit court's dismissal of Turcios's claims against them.

V. *Remaining Issues on Appeal*

In light of our holdings on the issues of service of process and collateral estoppel, we need not reach the merits of Turcios's third and fourth points on appeal.

VI. *Conclusion*

We reverse the circuit court's finding that Turcios failed to properly serve T. Carter and M. Lundy and remand for further proceedings consistent with this opinion. We affirm the circuit court's finding that Turcios's claims against the remaining appellees—A. Carter, Smith, Melton, Clifton, L. Lundy, and Harrison—are barred by the doctrine of collateral estoppel.

---

[9]Arkansas courts have consistently held that collateral estoppel may be asserted by a stranger to the first judgment or decree but is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question in the earlier proceeding. *Van Curen v. Ark. Pro. Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 55, 84 S.W.3d 47, 56 (2002). The parties need not be precisely the same for a judgment in one action to bar another, as long as there is a substantial identity and the same claim is at stake. *Id.*, 84 S.W.3d at 56. Because Turcios had a full and fair opportunity to litigate the malicious-prosecution and civil-conspiracy claims in the federal case, the collateral-estoppel doctrine can be asserted against him by Clifton, L. Lundy, and Harrison, despite the fact that they were not named parties in the federal case. We also note that Turcios alleged in his federal complaint that Clifton and L. Lundy were involved in the purported malicious prosecution and civil conspiracy against him.

Affirmed in part; reversed and remanded in part.

BARRETT and THYER, JJ., agree.

*Porter Law Firm*, by: *Austin Porter, Jr.*, for appellant.

*Thomas M. Carter*, City Att'y, by: *Rick Hogan*, Deputy City Att'y, for separate appellees Sgt. Tabitha Carter and Det. Michael Lundy.

*Leslie Rutledge*, Att'y Gen., by: *Kat Guest*, Ass't Att'y Gen., for separate appellee Andrea Carter.

*Hilburn & Harper, Ltd.*, by: *Scott Hilburn* and *Zachary L. Nicholson*, for separate appellee Liza Lundy.

*The Brad Hendricks Law Firm*, by: *Lloyd W. Kitchens*, for separate appellees December Smith, Sara Melton, and Myrtle Clifton.